**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Gutierrez-Valencia,<br><br>  Plaintiff,<br><br>v.<br><br>Corizon Utilization Management, et al.,<br><br>  Defendants. | No. CV-18-03007-PHX-JAT<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

In this prisoner civil rights case, Plaintiff Luis Gutierrez-Valencia sued several defendants under 18 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment right against cruel and unusual punishments. The Court presided over a bench trial on May 10, 2021 regarding Plaintiff's claim against Defendant Nathaniel Harris ("Defendant"), property sergeant at the Special Management Unit (SMU) of the Arizona State Prison Complex–Eyman. Plaintiff argues Defendant improperly withheld Plaintiff's transcutaneous electrical nerve stimulation (TENS) unit, which Plaintiff uses to treat his chronic back pain, between May 15, 2017 and January 18, 2018. The Court now finds and concludes the following.

## I.   FINDINGS OF FACT[1]

Plaintiff suffers from chronic back pain resulting from multiple car accidents and a gunshot wound. As part of his back-pain treatment, Plaintiff was permitted to have and

---

[1] The Court notes that both parties offered, and the Court admitted, very little documentary evidence in support of their positions at trial. (*See* Exhibits 6, 13, 100, 109, 115). Accordingly, unless otherwise indicated, the Court's findings are drawn from the parties' trial testimony.

use a TENS unit, and Plaintiff used the TENS unit daily. (Ex. 6).

On May 15, 2017, Plaintiff was transferred to a detention unit within SMU. (Ex. 100 at ADC0011, ADC0023). A detention unit is commonly used to house inmates following disciplinary infractions and has greater restrictions than other units within SMU. For example, Arizona Department of Corrections Order ("DO") 909, Attachment A provides that inmates housed in a detention unit may not possess playing cards, CD players, desk lamps, or—as relevant here—batteries. (Ex. 115 ADC0322).[2]

DO 909 § 1.3.3.1 provides that "[a]n inmate may be authorized to have . . . kept in his/her possession, . . . specialized medical equipment or items . . . which are clinically indicated for the inmate's medical condition(s)." (Ex. 115 at ADC0291). When an inmate in detention requires the use of a medical item that the inmate may not have in his possession, the inmate may ask to go to the medical department to use the item there.

Plaintiff and Defendant both testified at trial. Defendant testified that as property sergeant, he was responsible for checking the property that came into and left SMU to identify contraband. Defendant further testified that on May 16, 2017, he determined that Plaintiff's TENS unit constituted contraband under DO 909 because it contained batteries. Defendant asked his superior, the chief of security, whether the TENS unit constituted contraband, and the chief of security confirmed that Defendant was not allowed to possess his TENS unit. Defendant testified that his decision was not motivated by any personal animus towards Plaintiff, he did not know about Plaintiff's medical condition (although he did know the TENS unit was a medical item), and he did not receive written or verbal communication from Plaintiff regarding his TENS unit during the relevant period.

---

[2] The copy of DO 909 admitted at trial was effective from May 30, 2013 to November 18, 2017. (Ex. 115). The subsequent version of DO 909, which became effective on November 19, 2017 and remains in effect today, contains the same restrictions on the listed items. *See* Arizona Department of Corrections, Rehabilitation, and Reentry (ADOC) Department Order 909, Attachment A, at 10, 11 (available at https://corrections.az.gov/sites/default/files/policies/900/0909_031821.pdf); *see also* Fed. R. Evid. 201(b); *Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) (noting that courts "may take judicial notice of a record of a state agency not subject to reasonable dispute").

Plaintiff testified that as a result of his back injuries, he had severe and persistent back pain that would sometimes result in his inability to walk. He testified that he repeatedly requested to receive his TENS unit during the relevant period through written requests to both the medical and security departments and that he spoke to Defendant in the courtyard and the medical department several times about his TENS unit. Plaintiff stated that he believed Defendant harbored animosity towards him because Plaintiff participated in a prison riot around 2010 that resulted in serious injuries to a prison employee. Plaintiff further testified that another prison employee told Plaintiff that Defendant did not like Plaintiff. Plaintiff further testified that he was unable to use his TENS unit in the medical department because the property department refused to provide the TENS unit to the medical department.

The Court finds Defendant's testimony generally credible. Defendant's statement that he was simply following policy when he determined that Plaintiff's TENS unit was contraband is supported by DO 909, which prohibits inmates from possessing batteries. Indeed, it appears that Defendant would have violated DO 909 by allowing Plaintiff to receive his TENS unit as Plaintiff argues Defendant should have. Furthermore, the Court has no reason to believe Defendant's decision was motivated by hostility to Plaintiff. Although Plaintiff participated in a prison riot that injured another prison employee, this incident occurred approximately seven years prior to the period relevant to this case. Given this span of time, the Court does not find that this event impacted Defendant's decision not to allow Plaintiff to possess his TENS unit. Also, the Court is unpersuaded by Plaintiff's testimony that he heard from another prison employee that Defendant did not like him. The Court does not find this second-hand statement from an unidentified sergeant sufficient to overcome Defendant's testimony. Although Defendant testified candidly that he occasionally gets annoyed with certain inmates who are difficult to manage, the Court does not find that Defendant was motivated by any particularized hostility towards Plaintiff in this case.

Additionally, the Court finds credible Plaintiff's testimony regarding his injuries

and the severity of the resulting pain. Plaintiff's testimony is supported by the fact that prison medical providers have repeatedly authorized Plaintiff to possess and use the TENS unit over the course of several years. On other points, however, the Court does not find Plaintiff credible as his testimony is based on his belief rather than any first-hand knowledge and is unsupported by other evidence. Additionally, the Court notes that Plaintiff's testimony was lacking in particularity, which renders the testimony less credible. For example, Plaintiff testified that he asked a medical provider at the prison about his TENS unit, and Plaintiff believed that the provider contacted Defendant. Plaintiff also testified that he repeatedly wrote letters to the property department and received a letter back from Defendant at one point, but Plaintiff did not offer the letter as evidence in this case and could not recall what the letter said. Because they are unsupported by witnesses with personal knowledge or other evidence, the Court finds that statements such as these are unreliable. Accordingly, the Court finds that Defendant did not have notice of Plaintiff's medical condition during the relevant period.

## II.     ANALYSIS AND CONCLUSIONS OF LAW

### a.     Administrative Exhaustion

As a preliminary matter, the Court finds that Defendant waived the affirmative defense of administrative exhaustion.

#### 1.     Legal Standard

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust administrative remedies before suing in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is an affirmative defense that a defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 211–17 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The failure of a defendant to do so results in a waiver of the defense. *Lira v. Herrera*, 427 F.3d 1164, 1171 (9th Cir. 2005); *see also Tapia Fierro v. Wilmot*, No. CV 19-03096-PHX-JAT (ESW), 2020 WL 8483004, at *3 (D. Ariz. June 23, 2020); *Ross v. Arpaio*, No. CV 05-

4177-PHX-MHM, 2008 WL 4277666, at *2 (D. Ariz. Sept. 16, 2008). "To the extent evidence in the record permits, the appropriate device is a motion for summary judgment under Rule 56. If summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding." *Albino*, 747 F.3d at 1168. "[T]he exhaustion question in PLRA cases should be decided as early as feasible." *Id.*

### 2. Procedural History

The original Scheduling and Discovery Order in this case provided that "[a]ny motion seeking dismissal of Plaintiff's claims or judgment as a matter of law on Plaintiff's claims based on an assertion that Plaintiff failed to administratively exhaust his claims shall be brought no later than **June 13, 2019**." (Doc. 25 at 2). The Order also set October 11, 2019 as the dispositive motion deadline. (*Id.*). It further provided that "[i]f Defendant files a motion for summary judgment . . . based on Plaintiff's failure to exhaust prison administrative remedies as required by 42 U.S.C. § 1997e(a) and the Court denies that motion, Defendant may file a second motion for summary judgment without requesting permission from the Court within forty-five (45) days of ruling on the failure to exhaust or on **November 25, 2019**, whichever is later." (*Id.*).

On June 11, 2019, Defendant moved for "an extension of time to file a dispositive motion based on exhaustion of administrative remedies." (Doc. 45 at 1). The motion provided that it was "made for the purpose of providing a fully-briefed motion that will provide the Court the necessary information to make a ruling." (*Id.* at 2). The Court granted the motion and extended the deadline "to file a dispositive motion based on exhaustion" to July 1, 2019. (Doc. 46). Defendant did not file a motion within that deadline.

On August 26, 2019, following a motion by Plaintiff, the Court "extend[ed] deadlines that had not expired at the time of Plaintiff's motion." (Doc. 67 at 1). Accordingly, the dispositive motion deadline was extended to November 25, 2019. (*Id.* at 2). On November 25, 2019, Defendant filed a motion to again extend the dispositive motion deadline; this time, the motion was based on Defendant's inability to acquire

Plaintiff's medical records and made no mention of exhaustion. (Doc. 89). The Court granted the motion and extended the deadline to February 24, 2020. (Doc. 93).

On February 24, 2020, Defendant moved for another extension of the dispositive motion deadline (again based on medical records), and the Court granted the motion and extended the deadline to April 27, 2020. (Doc. 101; Doc. 102). Defendant did not file a motion within that deadline, and the Court later denied Plaintiff's request to "revive this expired deadline" and extend the deadline further. (Doc. 131 at 4).

Since Defendant's June 11, 2019 motion to extend the deadline, Defendant's first mention of administrative exhaustion was in the parties' proposed final pretrial order filed on January 19, 2021 in anticipation of a jury trial. (Doc. 168-1). Defendant included among his contested issues of law and fact, "Whether Plaintiff exhausted administrative remedies prior to filing this lawsuit as to his claims." (*Id.* at 6).

On April 30, 2021, the parties filed the updated proposed final pretrial order to reflect that this case was set for a bench trial. (Doc. 201-1). In the updated proposed final pretrial order, Defendant included among his proposed findings of fact a discussion of ADOC's inmate grievance procedures and stated that "[t]here is no evidence that Plaintiff submitted a grievance," and even if Plaintiff did, "there is no evidence that Plaintiff submitted a grievance appeal to any level." (*Id.* at 8).

That same day (six business days before trial), the parties jointly moved for a pretrial hearing "for the purpose of resolving the issue of exhaustion of administrative remedies." (Doc. 202). The Court granted the motion and scheduled the hearing for immediately preceding trial. (Doc. 203).

At the hearing, both parties acknowledged that the request for a hearing was effectively an untimely dispositive motion, and, the Court denied the motion on that basis. Following the close of Plaintiff's case, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure ("Rule") 50[3] in part because Defendant believed the Court should have allowed Defendant to present evidence related to

---

[3] Because Rule 50 applies only to jury trials, the Court interpreted Defendant's Rule 50 motion as a motion for judgment on partial findings under Rule 52(c).

- 6 -

administrative exhaustion, which the Court denied.

### 3. Analysis and Conclusion

On the record before the Court, the Court concludes that Defendant waived the affirmative defense of exhaustion. The record evinces no attempt on Defendant's part to resolve this issue "as early as feasible." *See Albino*, 747 F.3d at 1168. To the contrary, Defendant did not bring the exhaustion issue to the Court's attention despite several opportunities to do so. Defendant did not file a motion to dismiss on this basis despite moving for an extension of time to do so in June 2019. Defendant also did not move for summary judgment on exhaustion before the April 2020 deadline and made no further mention of exhaustion until the January 2021 proposed pretrial order for a jury trial. Setting aside the fact that administrative exhaustion is an issue for the Court to resolve rather than a jury, *see id.*, the inclusion of the issue in the January 2021 proposed pretrial order indicates that Defendant planned to wait until trial to address the issue.

A former Judge of this Court decided an analogous issue in *Ross v. Arpaio*. In that case, the defendant filed a motion to dismiss for failure to exhaust administrative remedies. 2008 WL 4277666, at *1. The Court denied the motion but allowed the defendant to file a new motion within 10 days of the denial, which the defendant did not do. *Id.* The Court then issued a scheduling order establishing subsequent dates by which motions to dismiss and motions for summary judgment could be filed, and the defendant did not file any such motion within the deadlines. *Id.* The defendant, however, filed a motion to dismiss 14 months after the order regarding the defendant's first motion to dismiss, 11 months after the subsequent motion to dismiss deadline, and 3 months after the summary judgment motion deadline. *Id.* The Court concluded:

> After Defendant's first Motion to Dismiss was denied, he was given two, arguably three, more bites at the apple. Yet he failed to raise the nonexhaustion argument either within 10 days of the Order denying the first motion, within the . . . motions to dismiss deadline, or even within the . . . dispositive motions deadline. On this record, Defendant has waived the affirmative defense of nonexhaustion. And, as set out by Plaintiff, there is no right to a jury determination on exhaustion; rather, the issue should be decided early in litigation.

- 7 -

> The Court concludes that Defendant waived the exhaustion defense by failing to raise it within the proper time period and, with this issue decided, it would be improper to raise it at trial.

*Id.* at *3.

As in *Ross*, Defendant had several opportunities to address the exhaustion issue by dispositive motion, but failed to do so. Accordingly, on this record, the Court concludes that Defendant waived the exhaustion affirmative defense.

### b.   Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). To show Plaintiff's Eighth Amendment rights have been violated, Plaintiff must make two showings: "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation. Second, the plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The plaintiff must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Given the Court's factual findings set forth above, Plaintiff has not met his burden of showing that Defendant acted with deliberate indifference to his health, and accordingly, judgment for Defendant is appropriate. At the time Defendant decided that Plaintiff could not be in possession of his TENS unit, DO 909 provided that inmates in detention could not possess batteries, and Defendant credibly testified that he was following that policy in good faith. Furthermore, although Defendant knew that the

TENS unit was a medical item, Defendant credibly testified that he did not know about the severity of Plaintiff's back condition at the time he made the decision. And other than second-hand reports from Plaintiff who had no personal knowledge, the trial record does not indicate that any communication occurred between prison medical professionals and Defendant that would have made Defendant subsequently aware of Plaintiff's medical condition. Given Defendant's lack of subjective awareness, the Court finds that Plaintiff has not met his burden of showing Defendant acted with deliberate indifference.

### c. Doe Defendants

On November 30, 2018, this Court Ordered: "Within 120 days from the filing date of this Order, Plaintiff must file a 'Notice of Substitution,' substituting Defendant Corizon Utilization Management Unit John and Jane Doe's actual name. The Court may dismiss without prejudice Defendant Corizon Utilization Management Unit John and Jane Doe if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time." (Doc. 11 at 11). After several interim extensions, on August 26, 2019, the Magistrate Judge to whom this case was assigned granted a motion for extension of time filed by Plaintiff and ordered: "Plaintiff must file a 'Notice of Substitution,' substituting Defendant Corizon Utilization Management Unit John Doe and Jane Doe's actual names by October 3, 2019. Failure to comply with the Court's order may result in the dismissal of the claims against Defendant Corizon Utilization Management Unit John and Jane Doe without prejudice." (Doc. 67 at 2). This was the last granted extension of time regarding filing a Notice of Substitution for the Doe Defendants, and Plaintiff failed to file any Notice of Substitution. Later, Plaintiff filed an objection to a Magistrate Judge Order. This Court summarized the state of the Doe Defendants as of January 22, 2020 as follows:

> Finally, Plaintiff asks the Court to explain whether "a decision was made or is being made in regard to Corizon defendants, so Plaintiff may refile and/or act accordingly." (Doc. 97 at 5–6). It does not appear that Plaintiff seeks any type of relief but merely explanation. If Plaintiff is seeking relief from the Court's order dismissing Corizon Utilization Management Unit John and Jane Doe, (*see* Doc. 67), it is denied as untimely and procedurally inappropriate.

> The Court previously noted it would dismiss Corizon Utilization Management Unit John and Jane Doe as parties on November 30, 2018 (Doc. 11), on March 14, 2019 (Doc. 26), on May 15, 2019 (Doc. 38), on July 19, 2019 (Doc. 61), and on August 26, 2019 (Doc. 67) because it is impossible for the United States Marshal to serve a summons and complaint upon anonymous defendants. The Court originally gave Plaintiff 120 days to cure by filing notices of substitution for all anonymous defendants with each defendant's actual name, (Doc. 11 at 11), but he failed to do so. The Court extended this deadline many times, (Docs. 26, 38, 61, 67), and eventually gave Plaintiff until October 3, 2019—over six months after the original deadline—to file a notice of substitution for any anonymous defendant. (Doc. 67). Therefore, Plaintiff had nearly ten months to file notices of substitution with the actual names of the anonymous defendants, and the Court's orders were not equivocal about what Plaintiff had to do. Plaintiff failed to do so, and the Court then dismissed the claims against these anonymous defendants, just as it said it would, on November 22, 2019.

(Doc. 100 at 7).

By these Findings of Fact and Conclusions of Law, the Court now formalizes the dismissal of the Doe Defendants referenced in this Court's January 22, 2020 Order.

### III. JUDGMENT

**IT IS ORDERED** that the Clerk of the Court shall enter judgment as follows:

(1) in favor of Defendant Harris and against Plaintiff for the reasons stated above;

(2) dismissing the Doe Defendants, without prejudice; and

(3) dismissing all other Defendants without prejudice for the reasons stated in this Court's Order of November 30, 2018. (*See* Doc. 11).

Dated this 24th day of May, 2021.

James A. Teilborg
Senior United States District Judge